(47 App. Div. 88.)

PEOPLE ex rel. TOWN OF PLATTSBURG, N. Y., v. WILLIAMS.

(Supreme Court, Appellate Division, Third Department.  January 8, 1900.)

INTOXICATING LIQUORS—LICENSE TAXES—APPLICATION—STATUTES—CONSTRUC-
TION.

Laws 1879, c. 435, § 3, as amended by Laws 1894, c. 471, required all
money arising from licenses granted in the town of Plattsburg to be paid
to the town treasurer for the support of the poor.  The liquor tax law
(Laws 1896, c. 112) required one-third of all excise moneys raised in every
town in the state to be paid to the state for its use, and the remaining
two-thirds to the town for its use, and repealed any special or local law
conflicting with that act.  Laws 1898, c. 125, which amended section 3 of
the act of 1879, required all excise moneys arising from licenses granted
in the town of Plattsburg to be paid to the treasurer of the poor fund of
the town, for the support of the poor and the construction and repair of
highways, and repealed all acts or parts of acts inconsistent with its provi-
sions.  *Held*, that by the act· of 1898 the town of Plattsburg was restored
to the right to use the whole of its excise moneys.

Appeal from special term, Clinton county.

Application by the people, on the relation of the town of Platts-
burg, for a peremptory mandamus against Andrew Williams, as
county treasurer of the county of Clinton.  From an order denying
the application (61 N. Y. Supp. 983), the relator appeals.  Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, and
MERWIN, JJ.

David H. Agnew, for appellant.
P. W. Cullinan, for respondent.

PARKER, P. J.  Prior to the passage of the liquor tax law in
1896, the disposition of all excise moneys arising from licenses
granted in the town of Plattsburg was regulated by section 3 of chap-
ter 435 of the Laws of 1879, as amended by chapter 471 of the Laws
of 1894.  That act was entitled "An act in relation to the raising of
funds for the relief of the poor of the town of Plattsburgh, in the
county of Clinton," and by it all such moneys were required to be
deposited by the excise commissioners with the "treasurer of the
poor fund," and to be expended, under the direction of the board of
alms, for the support of the poor of such town.  By the provisions
of the liquor tax law (chapter 112 of the Laws of 1896) such excise
moneys are required to be paid to the county treasurer, and he is
required to pay one-third thereof to the treasurer of the state of New
York, to the credit of its general fund, for the benefit of the state,
and the remaining two-thirds to the supervisors of the town.  Such
two-thirds are declared to "belong to the town," and the town is au-
thorized to appropriate and expend them "in such manner as is now
or may hereafter be provided by law for the appropriation and ex-
penditure of sums received for excise licenses," etc.  It is further
provided by such law that "the provisions of any special or local law,
grant or charter, in conflict with this act are hereby repealed and
annulled," and that "the repeal of any law by this act shall not re-
vive a law repealed thereby."  Thus, section 3 of the act of 1879, as
amended by the act of 1894, was repealed or annulled in so far as it

assumed to direct that all of the excise moneys collected in the town of Plattsburg should be applied to the support of its poor, and also in so far as it specified the town officers into whose custody such moneys should be intrusted. In all other respects it was unaffected by such liquor tax law, and therefore remained operative as to two-thirds of the excise moneys, which were by the latter act declared to "belong to the town." Subsequently, by chapter 125 of the Laws of 1898, such section 3 was again amended so that it should read as follows:

"Sec. 3. All excise money arising from licenses granted in the town of Plattsburgh shall be deposited with the treasurer of the poor fund of said town by the county treasurer of said county within ten days after the receipt by him of the same, to be used and expended under the direction of the board of alms of said town for the support of the poor of said town, and all fines and forfeitures recovered in said town for a violation therein of the 'liquor tax law' (except in the prosecution of indictment and except for a violation of chapter three hundred and twenty-two of the Laws of Eighteen Hundred and Ninety, and the acts amendatory thereof, amending the charter of the village of Plattsburgh) shall be paid to said treasurer of the poor fund of said town for like purpose. Provided, that in case the said moneys so paid to said treasurer annually, shall exceed the amount estimated by the board of alms of said town, as hereinafter provided, which in their opinion will be required for the relief of the poor of said town during the next ensuing year from the first day of May of each year, such excess shall be appropriated and expended for the construction and repair of the highways and bridges of said town, and for other town purposes, as shall be authorized and directed by the town board of said town of Plattsburgh, and shall be paid by said treasurer, as directed by said town board, upon the order of said town board, signed by the supervisor and clerk of the same, and for the purpose of ascertaining the amount of such excess, said board of alms shall on or before the tenth day of May in each year, make and file with the supervisor of said town of Plattsburgh an estimate of the amount which 'in their opinion will be required for the relief of the poor of said town during the ensuing year, from the first day of May of each year."

Such act of 1898 also further provides that "all acts or parts of acts inconsistent with the provisions of this act are hereby repealed."

By this amendment the application of the excise moneys collected in the town of Plattsburg is apparently changed in two particulars: First. All of such moneys are to be paid by the county treasurer to the treasurer of the poor fund of the town; thus diverting from the state the one-third which by the liquor tax law was to be paid into the treasury of the state, and appropriating it all to the uses of the town. Second. So much only should be applied to the support of the poor as the board of alms shall determine necessary for the ensuing year by an estimate made on or before May 10th of each year. The balance shall be applied to the construction and repair of highways. In this last particular the provisions of section 3, as they were originally fixed by the act of 1894, applied all of such moneys to the support of the poor, and none could have been appropriated to the highways of the town. The change allowing a portion of the excise moneys received by the town to be applied to the highways is not in conflict with any provision of law. But the first provision of the act, requiring that all of such moneys shall be paid over to the treasurer of the poor fund for the use of the town, is squarely inconsistent with the provision of the liquor tax

law requiring one-third thereof to be paid to the state; and the question presented by this proceeding is whether such construction is to be given to this statute as will permit of such a diversion of that one-third. "The cardinal rule in the interpretation of statutes is to arrive at, and give effect to, the intention of the legislative body which enacted them. This intention is primarily to be deduced from the language used in the statute itself, and it has been said that when such language is clear and unambiguous there is no room for construction, and that effect must be given to its plain and obvious meaning." It sometimes happens, however, that language which, when separated from the rest of the act, is thus plain and unambiguous, when read in connection with the whole act, or with the evident purpose to be accomplished by the act, may thereby be rendered ambiguous, and the necessity for construction may thereby arise. In such instances the legislative intent is to be gathered from the whole statute, its object, and the obvious purpose for which it was enacted. And also, in seeking for such intent, acts and parts of acts in pari materia may be considered. People v. Butler, 147 N. Y. 165, 167, 41 N. E. 416; Smith v. People, 47 N. Y. 330. But, when the language used "is susceptible of but one meaning, it must receive that meaning, although such construction leads to results which are absurd or mischievous." 23 Am. & Eng. Enc. Law, p. 299; Rosenplaenter v. Roessle, 54 N. Y. 262. Construing the act before, us by the rule above quoted,—and it is certainly as broad and favorable to the respondent as any I can find,—I am unable to concur with the decision from which this appeal is taken. There is certainly no ambiguity in the language of the statute itself. It is a distinct and clear direction that "all excise money arising from licenses granted in the town of Plattsburgh" shall be appropriated to the use of such town. Nor is there any other language in this act which would suggest any doubt upon the intent of the legislature to apply the whole of such excise moneys to that purpose. Neither does the plain purpose of the act itself suggest any such doubt. It is an act "in relation to the raising of funds for the relief of the poor" of that town. Its intent, manifestly, is that the poor fund of the town should be supplied from the excise moneys raised therein; and nowhere in the act is there a hint or suggestion that any part less than the whole of such moneys should be so applied, save the provision which gives so much of them as is not needed for that purpose to the highways. Thus, neither from the language of the act, when read all together, nor from the purpose and object for which it was enacted, do we find any reason to suppose that the legislature intended to appropriate any less than the whole of the excise moneys raised therein to the use of the town.

It is contended, however, that read in connection with the liquor tax law, above cited, it is apparent that the legislature could not have intended to appropriate more than two-thirds of such excise moneys to the use of such town. The basis of this argument is that such liquor tax law furnishes a general scheme for the disposition of all the excise moneys raised in every town in the state, and that scheme devotes one-third of the amount raised in each town to

the use of the state; that this act of 1898, which is one in pari materia with that act, so far as it relates to the disposition of excise moneys, must be read in connection with it; and that hence arises a doubt as to the intent of the legislature, which calls for judicial construction. But, reading the act of 1898 in connection with the other one, we still find that its language is plain and unmistakable. No phrase is used which, apparently plain in itself, becomes ambiguous when considered with the other act. It is true that the use of the phrase, "all excise moneys arising from licenses granted in the town of Plattsburgh," renders the act inconsistent with the requirement of the liquor tax law that one-third thereof be paid over to the state, but this inconsistency does not render the phrase itself ambiguous. If the legislature had intended to change the liquor tax law in this respect, and restore to the town of Plattsburg the right to use the whole of its excise moneys, this act of 1898 would have been a complete and appropriate method of doing it. In effect, it re-enacts so much of the act of 1894 as was repealed by the liquor tax law, and thus restores that town to the precise condition in which it was before such latter act took effect. And, when we remember that this very act of 1898 expressly repeals all acts and parts of acts inconsistent with its provisions, how shall we say that such restoration was not intended? The doubt which the liquor tax law suggests is not as to the meaning of the phrase above cited, but as to whether the legislature intentionally and understandingly used it. In other words, the only doubt which it suggests is whether the legislature would have been likely to do such a thing as the plain language of the act of 1898 indicates that it has done. Such a doubt is by no means an ambiguity that permits judicial construction. I concede that the reasons which inspired the legislature to such an act are to me unaccountable. I cannot conceive why the town of Plattsburg should be allowed to retain to its own use all of the excise moneys raised therein, while every other town and city in the state is required to pay over one-third thereof to the treasury of the state. But yet, if in its inscrutable wisdom the legislature has so enacted, it is not within the province of this court, under the form of judicial construction, to avoid or amend such legislation because it is unable to find therein either wisdom or justice. That the plain language of the act of 1898 does so enact cannot be doubted, and, except for the fact that we cannot understand the reason of it, there is nothing to indicate that the legislature did not intend it. I am of the opinion that the order appealed from should be reversed.

Order reversed, with $10 costs and disbursements, and an order granted that a peremptory writ of mandamus issue as asked for in the moving papers. All concur.